**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**IN THE MATTER OF THE**
**COMPLAINT OF A.P. FRANZ, JR.,**
**TRUSTEE, as owner, and**
**BUCHANAN MARINE, L.P., as**
**bareboat charterer of the Barge**          **1:13-cv-411**
**B-252 FOR EXONERATION FROM**          **(GLS/DJS)**
**OR LIMITATION OF LIABILITY.**

_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PETITIONERS:**
Lyons & Flood, LLP                      EDWARD P. FLOOD, ESQ.
65 West 36th Street, 7th Floor
New York, NY 10018

**FOR THE CLAIMANTS:**
*Wayne & Karen Volk*
Melley, Platania Law Firm               STEVEN M. MELLEY, ESQ.
24 Closs Drive
Rhinebeck, NY 12572

*Tilcon New York, Inc.*
Cook, Netter Law Firm                   ERIC M. KURTZ, ESQ.
P.O. Box 3939
85 Main Street
Kingston, NY 12402

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Petitioners A.P. Franz, Jr., Trustee, as owner, and Buchanan Marine,

L.P., as bareboat charterer, of the barge B-252 commenced this action pursuant to the Limitation of Liability Act of 1851[1] (hereinafter "Limitation Act") seeking exoneration from or limitation of liability. (Compl., Dkt. No. 1.) Pending are Franz and Buchanan's motion for summary judgment, (Dkt. Nos. 45-50), and the summary judgment motion of claimant Tilcon New York, Inc., (Dkt. No. 51). Claimants Wayne and Karen Volk cross-moved for summary judgment, seeking dismissal of the limitation proceeding. (Dkt. No. 53.) For the reasons that follow, the court grants the motions of Franz, Buchanan, and Tilcon, denies the Volks' cross-motion, and grants Franz and Buchanan's complaint for exoneration from liability.

## II. **Background**

**A.    Facts**[2]

_____

[1]  *See* 46 U.S.C. §§ 30501-30512.

[2]  Unless otherwise noted, the facts are not in dispute. Also, the failure of the Volks to comply with Local Rule 7.1(a)(3) by admitting or denying each of the numbered paragraphs in Franz and Buchanan's and Tilcon's statements of material facts is not without consequences. The Volks' "Statement of Relevant and Material Facts" contained within their memorandum of law in opposition to the summary judgment motions is not properly responsive. (Dkt. No. 53 at 3-13); *see* N.D.N.Y. L.R. 7.1(a)(3). It is riddled with legal conclusions, cites scant record support, and contains lengthy paragraphs which fail to admit or deny the numerical paragraphs of Franz and Buchanan's and Tilcon's statements of material facts. (Dkt. No. 53 at 3-13.) Consequently, Franz and Buchanan's and Tilcon's properly supported and uncontroverted facts are deemed admitted.

Claimant Wayne Volk (hereinafter "W. Volk") worked as a barge checker for Buchanan at the Clinton Point quarried rock processing facility operated by Tilcon on the Hudson River. (Pets.' Statement of Material Facts (SMF) ¶¶ 1, 7, Dkt. No. 49.) At the facility, Tilcon processes quarried rock and loads the rock onto barges supplied by Buchanan. (Tilcon's SMF ¶ 8, Dkt. No. 51, Attach. 1.) Using its tug boats, Buchanan then transports the barges down river to Tilcon's customers. (*Id.* ¶¶ 8, 35.)

On May 19, 2011, W. Volk fell and injured his right arm and shoulder while inspecting a barge after it was loaded with wet stone. (Pets.' SMF ¶ 13; Tilcon's SMF ¶¶ 42-45; Dkt. No. 53, Attach. 3 at 110; Dkt. No. 53, Attach. 12.) W. Volk slipped on loose, excess stones on the side or margin deck on the northern, port end of the barge's stern. (Dkt. No. 12 ¶ 5; Dkt. No. 53, Attach. 3 at 90-91.) Nobody witnessed his fall. (Pets.' SMF ¶ 13.) Before the barge was loaded, W. Volk inspected it and noted that its deck was clear of all stones. (*Id.* ¶ 14.) The stones that he tripped over came onto the deck during Tilcon's loading process. (*Id.*) W. Volk notified Timothy Conn, his supervisor and foreman, who was also employed by Buchanan, about his injury, and, the following day, Conn drove W. Volk to a clinic to receive medical treatment for the injury. (*Id.* ¶ 15; Tilcon's SMF

¶ 2.)

W. Volk has not worked since the accident and has been receiving workers' compensation under the Longshore and Harbor Workers' Compensation Act[3] (LHWCA). (Pets.' SMF ¶¶ 17, 21; Dkt. No. 47 ¶¶ 7, 9.) He also applied for New York State workers' compensation benefits, however, the board denied his claim because he was already receiving LHWCA benefits. (Pets.' SMF ¶ 17; Dkt. No. 47 ¶ 8.)

W. Volk's injury occurred aboard the barge B-252. (Pets.' SMF ¶ 13.) The B-252 was a "'dumb' barge" that required a tugboat to ferry it from place to place. (*Id.* ¶ 6; Dkt. No. 53, Attach. 3 at 22-24.) Franz owned the B-252 as a trustee, and, in July 1993, Franz bareboat chartered that barge along with his fleet of other barges and tug boats to Buchanan for a period set to expire in December 2018.[4] (Pets.' SMF ¶¶ 2-4; Dkt. No. 47, Attach. 1.) Pursuant to the bareboat charter, Franz transferred exclusive control to Buchanan to use, operate, command, and navigate his fleet of barges and tug boats. (Pets.' SMF ¶ 4; Dkt. No. 47, Attach. 1

---

[3] *See* 33 U.S.C. §§ 901-950.

[4] Prior to this litigation, the B-252 was scrapped "in the normal course of business." (Pets.' SMF ¶ 5.)

4

§ 8(b).)

Buchanan used the B-252 and the other barges to transport suppliers', like Tilcon's, products down the Hudson River to their customers. (Tilcon's SMF ¶¶ 7-13, 35, 38-41.) Although Buchanan docked its barges at Tilcon's Clinton Point facility, Buchanan retained responsibility for their inspection and maintenance. (*Id.* ¶¶ 15-16.) After the barges arrived at the facility, Buchanan employees would inspect them and report their findings to Conn, their supervisor, who then discussed with Alex Perlman, his supervisor, whether or not the barge was "loadable." (*Id.* ¶¶ 19, 21.) If the barges required maintenance, Conn would direct Buchanan employees to repair them before they were deemed suitable to be loaded and transported. (*Id.* ¶ 25.)

Once a barge was declared loadable, Tilcon's employees would load the quarried rock onto it. (*Id.* ¶ 28.) After the rock was loaded, the barge would be moved to another dock for Buchanan employees to conduct a final inspection before the barge would be transported by a tug boat down river to Tilcon's customers. (*Id.* ¶¶ 35-36, 38.)

As a barge checker, W. Volk was paid hourly. (Pets.'s SMF ¶ 11.) His employment duties involved inspecting Buchanan's barges that came

5

into the Clinton Point facility both before and after loading along with performing necessary repairs and maintenance to the barges. (*Id.* ¶¶ 7, 9, 11.) When W. Volk boarded the barges to perform inspections and maintenance they were berthed to the dock, but could be as many as three or four barges deep from the dock at one time. (*Id.* ¶ 8.) He was not assigned to work on a particular barge, did not eat meals on any barge, and never slept overnight on the barges. (*Id.* ¶¶ 10-11.) Additionally, W. Volk is a member of the International Union of Operating Engineers, which is a union for equipment operators. (*Id.* ¶ 20.) W. Volk does not belong to a maritime union and does not have maritime licences such as a seaman's work card, also known as a "ZCard." (*Id.* ¶ 19.) Accordingly, he never worked on one of Buchanan's tug boats. (*Id.* ¶ 18.)

## B.     Procedural History

On October 16, 2012, the Volks filed a complaint to recover for personal injury against Buchanan and Tilcon in New York State Supreme Court in Ulster County. (Compl., Attach. 2.) In response, on April 15, 2013, Franz and Buchanan commenced this federal court action pursuant to the Limitation Act seeking exoneration from or limitation of liability. (Compl.) Pursuant to Supplemental Rule F(1) of the Federal Rules of Civil

Procedure, Franz and Buchanan offered a security bond of $47,420.77, representing the value of their interest in the B-252.  (Compl. ¶ 11; Dkt. No. 1, Attach. 4.)  The court thereafter granted Franz and Buchanan's motion to approve security, enjoin suits, and direct the issuance of notice. (Dkt. No. 4.)

Both the Volks and Tilcon answered and asserted counterclaims. (Dkt. Nos. 6, 12, 15.)  Specifically, the Volks alleged both direct and derivative claims under the Jones Act,[5] LHWCA, general maritime law, and New York state law.  (Dkt. No. 15.)  The Volks then filed a motion to dismiss, (Dkt. No. 16), which the court subsequently denied, (Dkt. No. 21). The court directed Franz and Buchanan to increase their security by $10,000.  (*Id.*)  The parties completed discovery, and the motions referenced above were filed.  For the reasons that follow, the court grants the motions of Franz, Buchanan, and Tilcon, denies the Volks' cross-motion, and grants Franz and Buchanan's complaint for exoneration from liability.

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well

---

[5]  *See* 46 U.S.C. §§ 30101-30106.

established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

### A.  Limitation Act

In the court's earlier decision, it held that Franz and Buchanan's allegation that negligence occurred without their privity or knowledge sufficiently stated their entitlement to limit their liability under the Limitation Act on a motion to dismiss.  (Dkt. No. 21 at 8-9.)  The Volks now renew their argument on summary judgment.  (Dkt. No. 53 at 19.)  Specifically, the Volks contend that Franz or Buchanan cannot show that they did not have privity or knowledge of negligence because: (1) photos reveal unsafe conditions around the B-252; (2) there were stones on the deck of the port, stern side of the B-252 at the time of W. Volk's accident that Franz or Buchanan should have known about; (3) the Volks' expert confirmed that the presence of such stones violates Occupation Safety and Health Administration (OSHA) regulations; and (4) affidavits from former Buchanan employees state that stones regularly covered the barge decks.

8

(*Id.*; Dkt. No. 16, Attach. 1 at 8-12.)  In reply, Franz and Buchanan maintain that there is a factual dispute about the condition of the barge because its expert opined that the B-252 was "'fit for its intended purpose and seaworthy'" on the day of the accident.  (Dkt. No. 54 at 8 (quoting Dkt. No. 55, Attach. 3 at 8).)

A proceeding commenced pursuant to the Limitation Act "protects the right of vessel owners [and bareboat charterers] to limit their liability to the value of the vessel [and its frieght]."  *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 453 (2001); *see* 46 U.S.C. §§ 30501, 30505(a).  In fact, "[i]t is well established that a vessel owner may seek both limitation of liability and a total exoneration from liability in the same limitation action."  *In re Bridge Constr. Servs. of Florida, Inc.*, 39 F. Supp. 3d 373, 381 (S.D.N.Y. 2014).  The test of whether a vessel owner may be absolved from or can limit his liability requires two inquires.  *See Otal Invs. Ltd. v. M/V Clary*, 673 F.3d 108, 115 (2d Cir. 2012).  First, a claimant bears the initial burden to show what, if any, negligence caused the accident.  *See id.*  If a claimant does not demonstrate that actionable conduct occurred, "there is no liability to be limited and the owner would then be entitled to exoneration."  *Messina v. Murray (*In re *Messina)*, 574 F.3d 119, 126 (2d Cir. 2009)

9

(internal quotation marks and citation omitted). Only after a claimant demonstrates negligence, a vessel owner bears the burden to prove that he lacked knowledge or privity of such conduct. *See id.* at 127; *see also* 46 U.S.C. § 30505(b).

Franz and Buchanan move for summary judgment granting their complaint, arguing that they were not negligent or otherwise committed actionable conduct and, therefore, are entitled to exoneration. (Dkt. No. 50.) The Volks contend that Franz, Buchanan, and their co-claimant Tilcon are liable on a number of theories.[6] (Dkt. No. 15.) Specifically, the Volks allege claims under the Jones Act and the LHWCA as well as common law maritime claims including unseaworthiness, maintenance and cure, and general maritime claims. (*Id.* ¶¶ 26-42.) Additionally, the Volks allege violations of New York Labor Law § 200 along with ordinary negligence, nuisance, and gross negligence. (*Id.* ¶¶ 11-25, 43-52.) Tilcon asserts claims against Franz and Buchanan for indemnification or contribution. (Dkt. No. 6 ¶¶ 16-19.)

---

[6] The Volks may pursue claims against Tilcon because cross-claims are permissible in a limitation proceeding under the Limitation Act. *See British Transp. Comm'n v. United States*, 354 U.S. 129, 138 (1957); *see also Stissi v. Interstate & Ocean Transp. Co. of Philadelphia*, 765 F.2d 370, 377 (2d Cir. 1985).

*1.    Jones Act*

The Volks contend that they are entitled to relief under the Jones Act because W. Volk was a seaman who suffered a personal injury.  (Dkt. No. 53 at 13-17.)  Franz and Buchanan oppose and assert that W. Volk does not meet the standard to be a Jones Act seaman.  (Dkt. No. 50 at 4-11.)  Tilcon argues that it is not liable under the Jones Act because it was not W. Volk's employer.  (Dkt. No. 51, Attach. 3 at 10-11.)

Under the Jones Act, a seaman may recover from personal injury in the course of his employment against his or her employer.  *See* 46 U.S.C. § 30104.  To achieve seaman status the claimant must demonstrate an "employment-related connection to a vessel in navigation." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991); *accord Tonnesen v. Yonkers Contracting Co., Inc.*, 82 F.3d 30, 32 (2d Cir. 1996), *abrogated on other grounds by Stewart v. Dutra Constr. Co.*, 543 U.S. 481 (2005).  A putative seaman has an employment-related connection if (1) his duties contribute to the function of the vessel, and (2) the connection is substantial in duration and nature.  *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995); *accord O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 63 (2d Cir. 2002).  This status-based inquiry is a mixed question of law and fact,

and summary judgment will be awarded "where the facts and the law . . . reasonably support only one conclusion."  *O'Hara*, 294 F.3d at 63-64 (internal quotation marks and citations omitted).

The Second Circuit, in *O'Hara*, held that the claimant was not a Jones Act seaman because he had at most "a transitory or sporadic connection" to the barges "in their capacity as vessels in navigation."  *Id.* at 64 (internal quotation marks omitted).  Specifically, the claimant lacked maritime licenses, spent no nights aboard the barges, and did not operate the vessels.  *Id.*  Rather, the claimant belonged to a dockbuilders union and only worked aboard the barges when they were fully secured to the pier that he was employed to repair.  *Id.*

Assuming without deciding that W. Volk meets the first criteria, *see id.* at 63 ("This standard is liberal. . . . All who work at sea in the service of a ship are *eligible* for seaman status." (internal quotation marks and citation omitted)), his connection to the B-252 is far from substantial in either duration or nature.  On the contrary, W. Volk is square on all fours with the claimant in *O'Hara*.  He never slept on the vessel, held no maritime licenses, and never worked on a Buchanan tug boat.  (Pets.' SMF ¶¶ 10-11, 18-19.)  Instead, W. Volk was a member of Local 825, a union

for equipment operators, and only performed inspection and repair work when the barges were secure to the docks at the Clinton Point facility. (*Id.* ¶¶ 7-8, 20.) Finally, W. Volk was not assigned to a particular vessel, but instead serviced all barges that came through the facility. (*Id.* ¶ 9.) As a result, he does not qualify for seaman status, and petitioners and Tilcon[7] are awarded summary judgment on the Volks' Jones Act claims.

2. *Longshore and Harbor Worker's Compensation Act (LHWCA)*

The LHWCA is a no-fault workers' compensation scheme that supplies benefits to longshoremen and harbor-workers who are injured in the course of their employment. *See generally* 33 U.S.C. §§ 901-950. "Like most state workers' compensation schemes, the LHWCA provides that the statutory, no-fault compensation payments are the employer's exclusive liability to its employees when they are injured in the course of their employment." *Gravatt v. City of New York*, 226 F.3d 108, 115 (2d Cir. 2000). Consequently, employers are insulated from injured employees' tort claims. *See id.*; 33 U.S.C. § 905(a).

At the same time, injured employees may pursue tort claims against

---

[7] Additionally, W. Volk does not qualify for relief under the Jones Act against Tilcon because Tilcon is not his employer. (Pets.' SMF ¶ 7); *see* 46 U.S.C. § 30104.

third parties and still receive LHWCA workers' compensation payments. *See* 33 U.S.C. § 933(a). In particular and unique to the LHWCA, the statute explicitly allows injured employees to recover against the vessel for its negligence. *See id.* § 905(b); *Gravatt*, 226 F.3d at 115. However, to guarantee the exclusivity of the statute's no-fault remedy against employers, the LHWCA bars third parties from impleading employers for contribution or indemnification. *See* 33 U.S.C. § 905(b) ("[T]he employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.").

A vessel's negligence is governed by uniform federal law and "the contours of the action for vessel negligence under 905(b) [is] to be worked out by federal courts." *Gravatt*, 226 F.3d at 117-18 (citing H.R. Rep. No. 92-1441 (1972), *reprinted in* 1972 U.S.C.C.A.N. at 4704-05). The Supreme Court in its seminal opinion *Scindia Steam Navigation Co., Ltd v. De Los Santos,* 451 U.S. 156, 165 (1981), acknowledged that Congress "did not specify the acts or omissions of the vessel that would constitute negligence" and defined a vessel's three duties of care. A vessel's three actionable obligations would later become known as the *Scindia* duties. *See, e.g.*, *Gravatt*, 226 F.3d at 120-21.

14

First, a vessel has a turnover duty.  *See Scindia*, 451 U.S. at 167;

*Howlett v. Birkdale Shipping Co. S.A.*, 512 U.S. 92, 98 (1994).  This duty

requires a vessel owner to exercise "ordinary care under the circumstances

to have the ship and its equipment in such condition that an expert and

experienced stevedore will be able by the exercise of reasonable care to

carry on its cargo operations with reasonable safety."  *Scindia*, 451 U.S. at

167.  Additionally, a vessel owner must notify the stevedore[8] of "hidden

danger which would have been known to him in the exercise of reasonable

care."  *Id.*

Second, a vessel has an active control duty.  *See id.*; *see also*

*Howlett*, 512 U.S. at 98.  Accordingly, "once stevedoring operations have

begun, the vessel will be liable 'if it actively involves itself in the cargo

operations and negligently injures a longshoreman.'"  *Gravatt*, 226 F.3d at

121 (quoting *Scindia*, 451 U.S. at 167).  Moreover, "the vessel must take

care to prevent unreasonable hazards in areas of the vessel under its

direct control."  *Id.*

Finally, a vessel has a duty to intervene.  *See Scindia*, 451 U.S. at

---

[8]  Generally, stevedores are contractors who perform services including moving waterborne freight or working on piers or vessels when the vessels are moored.  *See, e.g.*, N.Y. Waterfront & Airport Comm'n Act § 9806.

175-76.  This duty requires a vessel owner to intervene if he actually knows that a condition on the vessel or its equipment poses an unreasonable risk of harm and the stevedore is not exercising reasonable care to protect his employees. *See id.*; *see also Gravatt*, 226 F.3d at 121.

a.    Tilcon

Tilcon asserts that it has no LHWCA liability because it did not employ W. Volk nor did it own the B-252.  (Dkt. No. 51, Attach. 3 at 13.)  Because LHWCA liability only attaches to employers or vessels, *see* 33 U.S.C. § 905, Tilcon's motion on this ground is granted.  However, the Volks are not precluded from pursuing other third party tort claims against Tilcon.  *See* 33 U.S.C. § 933(a); *see also Gravatt*, 226 F.3d at 115.

b.    Franz

Franz maintains that it is not liable because it was not the owner of the B-252 as it bareboat chartered the B-252 to Buchanan.  (Dkt. No. 50 at 14-17.)  A bareboat charter, or demise, is "tantamount to, though just short of, an outright transfer of ownership."  *Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962); *accord Am. Petroleum & Transp., Inc. v. City of New York*, 737 F.3d 185, 187 n.1 (2d Cir. 2013).  To have an effective bareboat charter, "the owner of the vessel must completely and exclusively relinquish [its]

possession, command, and navigation" over the vessel. *Guzman*, 369 U.S. at 699 (internal quotation marks and citations omitted). The charterer then becomes owner *pro hac vice* "of the vessel for the period of the charter and is responsible for the vessel's operation." *Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85, 91 (5th Cir. 1981). To that end, the charterer is liable for all damages arising from the vessel's operation. *See id.* "The charter may describe the duties of [the vessel owner and the charterer] and provide for the shifting of risks between them, but, in general, control entails responsibility for fault." *Id.* Thus, because the charterer ordinarily retains full control, it is ultimately liable for damages arising from the vessel's operations. *See id.*

Regarding LHWCA liability under a bareboat charter, the original vessel owner is only responsible for its "turnover duty." *Gravatt*, 226 F.3d at 120-21; *see Miller v. AGS Chartering Co.*, 1993 WL 232063, at *3 (E.D. La. June 21, 1993) (citing *Scindia*, 451 U.S. at 167). As noted above, this duty requires a vessel owner to warn a stevedore about:

> the condition of the [vessel's] gear, equipment, tools, and work space to be used in the stevedoring operations; and if [it] fails at least to warn the stevedore of hidden danger which would have been known to [it] in the exercise of reasonable care, [the

vessel owner] has breached [its] duty and is liable if
[its] negligence causes injury to the longshoreman.

*Scindia*, 451 U.S. at 167.  This same duty to warn of latent defects applies

between vessel owners and bareboat charterers.  *See Miller*, 1993 WL

232063 at *3.

Here, Franz bareboat chartered the B-252 along with its fleet of other

barges and tug boats to Buchanan.  In July 1993, Franz and Buchanan

executed a charter, which was in effect at the time of W. Volk's injury on

May 19, 2012.  (Pets.' SMF ¶¶ 3-4; Dkt. No. 47 ¶¶ 5-6; Dkt. No. 47,

Attach. 1.)  Pursuant to the charter, "the possession, use, operation and

maintenance of the [v]essels [was] at the sole risk, cost and expense of

[Buchanan]."  (Dkt. No. 47, Attach. 1 § 8(b), at 5.)  Notably, the charter

explained that Buchanan would "defend, indemnify and save harmless

[Franz] from and against . . . any claim, cause of action, damage, liability or

expense."[9]  (*Id.*)  Because Franz relinquished control of its barges including

the B-252, it duly bareboat chartered the B-252 to Buchanan.  *See*

*Guzman*, 369 U.S. at 699.

Equally important, the negligence that the Volks complain of does not

_____

[9]  The charter, however, carved out Buchanan's liability for gross negligence or willful
misconduct on the part of Franz.  (Dkt. No. 47, Attach. 1 § 8(b), at 5.)

relate to Franz's turnover duties to warn Buchanan of hidden dangers. *See Scindia*, 451 U.S. at 167. To be sure, W. Volk testified that he slipped on loose rocks on the B-252, but those loose rocks were not present on the barge before it was loaded. (Dkt. No. 53, Attach. 3 at 90-91.) Accordingly, the loose rocks were not a hidden danger that Franz could have informed Buchanan about. The Volks also allege that Franz breached its turnover duty because it failed to warn Buchanan about the absence of hand grips and hand rails and that the margin decks were narrow. (Dkt. No. 53 at 17-18.) Franz, however, only has a duty to warn of defects "that are not known by the [bareboat charterer] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." *Scindia*, 451 U.S. at 167. Narrow margin decks and lacking hand grips and hand rails are examples of obvious features that are exempt from notice. *See, e.g.*, *Toups v. Marine Transp. Servs., Inc.*, No. CIV. A. 99-2481, 2000 WL 1159392, at *3 (E.D. La. Aug. 15, 2000) (holding that potential hazards posed from the absence of a ladder or gangway was noticeable to a reasonably competent stevedore). Accordingly, the Volks do not have a LHWCA claim against Franz, and petitioners' motion on this ground is granted.

19

c.    Buchanan

Buchanan acknowledges it is liable under the LHWCA, however, asserts that W. Volk's remedy is limited to LHWCA workers' compensation payments under the statute's no-fault insurance scheme.  (Dkt. No. 50 at 17-22.)  The court agrees.

As noted above, workers' compensation payments are the exclusive remedy for an injured employee against his employer.  *See* 33 U.S.C. § 905(a).  However, a unique problem arises when the employer is also the vessel owner, *see Gravatt*, 226 F.3d at 118-20, or in this case, the owner *pro hac vice*.  In this situation, courts refer to the employer as a dual-capacity employer-owner.  *See, e.g.*, *id.* at 115-16; *Daza v. Pile Found. Const. Co., Inc.*, 983 F. Supp. 2d 399, 411 (S.D.N.Y. 2013).  Reasoning that an injured employee has a third party claim against a negligent vessel, the Supreme Court held that an injured employee may also allege tort claims against a dual-capacity employer-owner.  *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 528-32 (1983); *Gravatt*, 226 F.3d at 119.  To be sure, "Congress intended a general principle that the rights and liabilities of employee and employer should not turn on whether the employer acted in a dual-capacity as vessel owner."  *Gravatt*, 226 F.3d at

20

119.  That said, "it [is] clear that a vessel owner acting as its own stevedore is liable only for negligence in its 'owner' capacity, not for negligence in its 'stevedore' capacity."  *Pfeifer*, 465 U.S. at 531 n.6 (citing 33 U.S.C. § 905(b) (1972), *amended by* 33 U.S.C. § 905(b) (1984)).

The Second Circuit in *Gravatt* analyzed how a vessel's *Scindia* duties apply to a dual-capacity employer-owner.  *See Gravatt*, 226 F.3d at 120-25.  With respect to the turnover duty, *Gravatt* held that this duty clearly aligned with a dual-capacity owner-employer's capacity in vessel operations.  *See id.* at 122.  As a result, a dual-capacity employer-owner is liable as a vessel if it violates its turnover duties.  *See id.*  By contrast, the court explained that determining whether a vessel acted in its capacity as a vessel or employer under the second and third duties presented courts with a greater challenge.  *See id.* at 122-23.  Relying on precedent from the First and Fifth Circuits, the court held that "[l]iability in vessel negligence under section 905(b) will only lie where the dual-capacity defendant breached its duties of care while acting in its capacity as vessel owner."  *Id.* at 124.  Accordingly, "the court's task is to analyze . . . whether [the allegedly negligent] conduct was performed in the course of the operation of the owner's vessel as a vessel or whether the conduct was

21

performed in furtherance of the employer's harbor-working operations." *Id.*
at 125.

Applying this rule, *Gravatt* held that the dual-capacity vessel-
employer was negligent in its role as employer and not in its capacity as a
vessel. *See id.* The dockbuilder in that case was injured by debris that
slipped from a crane's teeth, which knocked him into the Harlem River.
*See id.* at 113. The undisputed negligence was attributed to the
dockbuilder's supervisor for failing to properly oversee materials handling
and to the crane's hoisting procedure and use of timber tongs, which
violated industry standards and state and federal regulations. *See id.* at
113-14 nn.3-4. The court determined that the negligence of the supervisor
and the construction procedure related to the dual-capacity vessel-
employer's role as an employer because the vessel was acting in its
"capacity as contractor performing bridge repairs not in its capacity as
vessel owner." *See id.* at 126. Consequently, the dockbuilder's exclusive
remedy was LHWCA workers' compensation. *See id.* (citing 33 U.S.C.
§ 905(a)).

Here, the Volks allege that Buchanan was negligent because it
committed "multiple OSHA violations as to the configuration of the margin

decks, . . . the lack of hand grips or hand rails," and that the B-252 was "covered with stones when [W. Volk] slipped and fell." (Dkt. No. 53 at 17-18.) Buchanan has not violated its turnover duties for the same reasons as Franz. *See supra* Part IV.A.2.b. Namely, the alleged dangers were apparent and would be anticipated by longshoreman inspecting the barge. *Id.*

Nor was Buchanan engaged in vessel duties at the time of the accident. When functioning as a vessel, Buchanan would send its empty barges to the Clinton Point facility, and then, after Tilcon loaded its quarried rock, Buchanan would send its barges down the Hudson River to deliver the quarried rock to Tilcon's customers. (Tilcon's SMF ¶¶ 7-8, 35, 38-39.) When functioning as a stevedore, Buchanan employees inspected and repaired the barges at the Clinton Point facility while Tilcon loaded its product. (*Id.* ¶¶ 10-15, 19-29, 35-38.) In short, "[t]he performance of [inspection and repair] work was separate and apart from the vessel's work." *Gravatt*, 226 F.3d at 125. W. Volk's injury occurred because of alleged negligence that happened during the time that Buchanan was operating as a stevedore. *See Daza*, 983 F. Supp. 2d at 411 (finding no vessel negligence when "the injury was [the vessel's] responsibility as

employer and not vessel owner").  As W. Volk's injury is attributable to conduct related to Buchanan's capacity as his employer, LHWCA workers' compensation benefits are his exclusive remedy.

## B.  General Maritime & State Law Claims

The Volks also assert numerous general maritime and state law claims against Franz, Buchanan, and Tilcon.  (Dkt. No. 15 ¶¶ 11-25, 30-39, 43-49.)  As an initial matter, the claims against Franz and Buchanan must fail because the LHWCA preempts all other claims against a claimant's employer and vessel.  *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001) (citing 33 U.S.C. §§ 904(b), 905(b)).[10]

The Volks may still pursue claims against Tilcon as an alleged third party tortfeasor.  *See* 33 U.S.C. § 933(a).  Specifically, the Volks allege maritime claims of unseaworthiness and maintenance and cure as well as other general maritime claims.  (Dkt. No. 15 ¶¶ 30-39.)  The Volks also allege claims of ordinary negligence, N.Y. Labor Law § 200, nuisance, and gross negligence.  (*Id.* ¶¶ 11-25, 43-49.)  Tilcon opposes and maintains

---

[10]  For that reason, K. Volk's derivative claims for loss of consortium must also fail. *See Izaguirre v. Ugland Marine Mgmt. AS*, Civil Action No. H-11-04195, 2013 WL 820501, at *5 (S.D. Tx. Mar. 5, 2013); *see also Wright v. City of Ithaca*, No. 5:12-cv-378, 2012 WL 1717259, at *5 (N.D.N.Y. May 15, 2012).

that it does not owe a duty to the Volks.  (Dkt. No. 51, Attach. 3 at 5-9, 11-12, 14-15.)  The court agrees with Tilcon.

    *1.    Maritime Claims Against Tilcon*

The Volks assert three maritime claims arising under federal common law against Tilcon.  For the reasons that follow, all claims are meritless.

First, the Volks allege that Tilcon breached its duty to provide a seaworthy vessel.  (Dkt. No. 15 ¶¶ 30-32.)  Tilcon, however, was not the owner of B-252 and, as a result, bore no such duty.  *See Oxley v. City of New York*, 923 F.2d 22, 24-25 (2d Cir. 1991); *Lisowski v. Reinauer Transp. Co, Inc.*, No. 03-CV-5396, 2009 WL 763602, at *13 (E.D.N.Y. Mar. 23, 2009).  What is more is that W. Volk does not have a cognizable unseaworthiness claim against any alleged tortfeasor because, as discussed above, he is not a seaman.  *See Scindia*, 451 U.S. at 165 (explaining that the 1972 amendments to the LHWCA abolished "the longshoreman's right to recover for unseaworthiness"); *accord Gravatt*, 226 F.3d at 116.

Second, the Volks allege that Tilcon breached its duty to provide maintenance and cure to W. Volk.  (Dkt. No. 15 ¶¶ 33-35.)  This claim fails

on similar grounds because Tilcon is not the owner of B-252. *See Lewis*, 531 U.S. at 441 ("A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship."). Again, this action is only available to seaman, and W. Volk does not qualify. *See Mahramas v. Am. Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 170 (2d Cir. 1973); *see also* 1B-IV Benedict on Admiralty § 44 (2015) ("Longshoremen, of course, have never been entitled to maintenance and cure.").

Finally, the Volks assert general maritime claims against Tilcon. (Dkt. No. 15 ¶¶ 36-39.) Such claims are based on a vessel owner's duty to those aboard his ship, and, thus, are inapplicable to Tilcon. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *see also Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 171-72 (2d Cir. 1983); *In re Treanor*, No. 13-CV-5489, 2015 WL 7016954, at *6 (E.D.N.Y. Nov. 6, 2015).

    2.    *State Law Claims Against Tilcon*

The Volks also allege state law claims against Tilcon including negligence, gross negligence, and violations of N.Y. Labor Law § 200. (Dkt. No. 15 ¶¶ 11-25, 46-49.) N.Y. Labor Law § 200(1) codifies the

common law duty requiring landowners, general contractors, and employers to maintain a safe workplace.[11]  *See* N.Y. Labor Law § 200(1); *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505 (1993).  Such parties may be liable if the employee's injury is caused by the negligent means or manner that the work is performed.  *See Ross*, 81 N.Y.2d at 505.  Landowners, like Tilcon, violate this duty if they have supervisory control over the operation which leads to the injury.  *See Barreto v. Metro. Transp. Auth.*, 25 N.Y.3d 426, 434-35 (2015); *Ross*, 81 N.Y.2d at 505.

W. Volk was injured after he tripped over loose stones on the margin deck of the B-252.  (Pets.' SMF ¶ 13.)  The alleged negligence which caused W. Volk's injury could plausibly originate from one of two sources.  The first is where the stones reached the margin deck of the B-252 from a barge weeper, which is a drainage hole on the side of a barge.  (Tilcon's SMF ¶¶ 30-34; Dkt. No. 53, Attach. 3 at 91-93.)  The second is where the stones could have been overloaded by Tilcon and spilled onto the margin deck.  (Pets.' SMF ¶ 14; Dkt. No. 53, Attach. 3 at 93.)

Because the weepers are a component of the barges, they are within

---

[11]  Courts consistently evaluate ordinary negligence and N.Y. Labor Law § 200 claims in tandem.  *See, e.g.*, *Barreto v. Metro. Transp. Auth.*, 25 N.Y.3d 426, 434-35 (2015).

the control of Buchanan — not Tilcon. (Pets.' SMF ¶¶ 2-4.) Even assuming the weepers were defective, W. Volk may only recover against Buchanan under the LHWCA because it is his exclusive remedy as Buchanan is his employer or vessel owner. *See* 33 U.S.C. § 905(a)-(b).

Nevertheless, the Volks may still recover against Tilcon as a third party. *See* 33 U.S.C. § 933(a). Despite Tilcon's disagreement, the record reveals that it supervised and controlled loading the wet stone onto the B-252. (Tilcon's SMF ¶¶ 28-29.) Therefore, a reasonable jury could infer that Tilcon's alleged negligent overloading was a substantial factor in W. Volk's injury. *See Dos Santos v. Terrace Place Realty, Inc.*, 433 F. Supp. 2d 326, 334 (S.D.N.Y. 2006).

Tilcon, however, asserts that the alleged hazard was open and obvious obviating any liability. (Dkt. No. 51, Attach. 3 at 7.) The court agrees. "The duty of an employer or owner to provide workers with a safe place to work does not extend to . . . hazards that may be readily observed by reasonable use of the senses in light of the worker's age, intelligence and experience." *Bodtman v. Living Manor Love, Inc.*, 105 A.D.3d 434, 434-35 (1st Dep't 2013) (internal quotations and citations omitted); *see also Vega v. Restani Constr. Corp.*, 18 N.Y.3d 499, 506-07 (2012). W.

Volk testified that, before he tripped, he saw "a large amount of . . . stone" and chose not to walk around it because there was "[n]o way to get around it." (Dkt. No. 53, Attach. 3 at 101.) W. Volk was an experienced barge checker who regularly inspected barges for defects. (Tilcon's SMF ¶ 19; Dkt. No. 53, Attach. 3 at 5.) To be sure, W. Volk suggested that the origin of the loose stone could be from the weeper or "probably bounced over the side [of the barge] being overloaded." (Dkt. No. 53, Attach. 3 at 91-93.) As a result, Tilcon established that it is entitled to judgment, and the Volks failed to raise a question of fact regarding Tilcon's alleged negligence.[12] *See Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP*, 26 N.Y.3d 40, 49 (2015).

Finally, the Volks allege that they were endangered by a public or private nuisance that Tilcon permitted on its property. (Dkt. No. 15 ¶¶ 43-45.) At the outset, the Volks do not have a cognizable action for public nuisance because they are not a state agency authorized to seek redress for a wrong committed against the public. *See Copart Indus., Inc. v.*

---

[12] Because the Volks fail to establish claims for ordinary negligence, their claim for gross negligence necessarily fails. *See generally Colnaghi, U.S.A., LTD. v. Jewelers Prot. Servs., LTD.*, 81 N.Y.2d 821, 823-24 (1993); *see also Lubell v. Samson Moving & Storage, Inc.*, 307 A.D.2d 215, 217 (1st Dep't 2003).

*Consol. Edison Co. of N.Y., Inc.*, 41 N.Y.2d 564, 568 (1977) ("A public

. . . nuisance is an offense against the State and is subject to abatement or

prosecution on application of the proper governmental agency.") (internal

citations omitted); *see also City of New York v. Smokes-Spirits.Com, Inc.*,

12 N.Y.3d 616, 626-27 (2009); *but see Wakeman v. Wilbur*, 147 N.Y. 657,

663-64 (1895) (holding an individual may recover in a public nuisance

action if he suffered special damages resulting from a "private and peculiar

injury").  Even if W. Volk had standing to bring an action on this ground, his

injury is not the result of "conduct or omissions which offend . . . the public

in the exercise of rights common to all, in a manner such as to offend

public morals."  *Copart Indus., Inc.,* 12 N.Y.3d at 568 (internal citation

omitted).

The Volks are no more successful on their theory of private nuisance.

A private nuisance is negligent or intentional conduct where the defendant

substantially and unreasonably interfers with the plaintiff's right to use and

enjoy his property.  *See id.* at 570; *see also Berenger v. 261 W. LLC*, 93

A.D.3d 175, 182 (1st Dep't 2012).  In short, "[n]uisance is characterized by

a pattern of continuity or recurrence of objectionable conduct."  *Berenger*,

93 A.D.3d at 182.  Nothing in the record suggests that Tilcon could have

interfered with the Volks' right to use and enjoyment, particularly, because the Volks did not own the Clinton Point facility where the injury occurred. (Pets.' SMF ¶¶ 1, 7); *see generally Domen Holding Co. v. Aranovich*, 1 N.Y.3d 117, 123-24 (2003).

In sum, because the Volks have not established negligence or other actionable conduct against Franz and Buchanan under any alleged theory, the complaint for exoneration from liability is granted. *See Messina*, 574 F.3d at 126; *see also The 84-H*, 296 F. 427, 432 (2d Cir. 1923). Consequently, Tilcon's claims for contribution or indemnification are dismissed. Furthermore, for the reasons stated above, the Volks' cross-claims against Tilcon are dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Franz and Buchanan's motion for summary judgment (Dkt. No. 45) is **GRANTED**; and it is further

**ORDERED** that the complaint for exoneration (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that Tilcon's motion for summary judgment (Dkt. No. 51) is **GRANTED**; and it is further

31

**ORDERED** that Tilcon's claims for contribution or indemnification (Dkt. No. 6 ¶¶ 16-19) are **DISMISSED**; and it is further

**ORDERED** that the Volks' cross-motion for summary judgment to dismiss the limitation proceeding (Dkt. No. 53) is **DENIED**; and it is further

**ORDERED** that the Volks' cross-claims against Tilcon are **DISMISSED**.

**IT IS SO ORDERED.**

March 10, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge